IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 2, 2024 at Jackson

**BRANDON MARQUELL BROWN v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Robertson County
Nos. 2021-CR-510, 2022-CR-62    Robert T. Bateman, Judge**

_____

**No. M2023-01194-CCA-R3-PC**

_____

The Petitioner, Brandon Marquell Brown, appeals the Robertson County Circuit Court's denial of his petition for post-conviction relief, challenging his guilty-pleaded convictions for two counts of coercion of a witness and one count of aggravated assault.  The Petitioner argues that the post-conviction court erred in denying his petition for post-conviction relief. Specifically, the Petitioner alleges that (1) his guilty pleas were not knowing, intelligent, and voluntary and (2) trial counsel was ineffective for failing to investigate and prepare the Petitioner's cases by interviewing pertinent witnesses and for failing to meet with the Petitioner and review discovery with him.  Following our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

KYLE A. HIXSON, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and TOM GREENHOLTZ, JJ., joined.

Alexa M. Spata, Clarksville, Tennessee, for the appellant, Brandon Marquell Brown.

Jonathan Skrmetti, Attorney General and Reporter; William C. Lundy, Assistant Attorney General; Robert J. Nash, District Attorney General; and Jason White, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I.    FACTUAL AND PROCEDURAL HISTORY**

A.    Guilty Plea Proceedings

On October 19, 2018, the Petitioner, Brandon Marquell Brown, pleaded guilty in case 2018-CR-562 to making a false report to a law enforcement officer ("false report

case"). *See* Tenn. Code Ann. § 39-16-502. For his plea in the false report case, the Petitioner was given a two-year suspended sentence to be served on supervised probation. The Petitioner was subsequently charged in case 2019-CR-420 with aggravated statutory rape and solicitation of a minor ("rape and solicitation case"), and a violation of probation warrant was issued in the Petitioner's false report case based upon these new charges. *See id.* §§ 39-13-506, -528. Then, the Petitioner was charged in case 2021-CR-510 with two counts of coercion of a witness ("coercion case"), and the probation violation warrant in his false report case was amended to reflect these new charges. *See id.* § 39-16-507. Thereafter, the Petitioner was charged with aggravated robbery in case 2022-CR-62 ("aggravated robbery or aggravated assault case"), and the false report probation violation warrant was amended once more. *See id.* § 39-13-402.

On June 14, 2022, the Petitioner, represented by trial counsel, entered into a global plea agreement disposing of the pending matters against him. Per the terms of the agreement, the Petitioner admitted to violating his probation in the false report case and received a time-served sentence. In the aggravated robbery case, the Petitioner pleaded guilty to aggravated assault as a lesser included offense, receiving a three-year sentence of imprisonment with the Tennessee Department of Correction ("TDOC"). In the coercion case, the Petitioner pleaded guilty to the two counts and received two concurrent three-year sentences. The three-year sentence in the aggravated assault case was to run consecutively to the effective three-year sentence in the coercion case. The rape and solicitation case was dismissed. In total, pursuant to the agreement, the Petitioner was sentenced to an effective six-year term of imprisonment with the TDOC.

At the guilty plea hearing, the Petitioner affirmed under oath that he had signed the petition for waiver of trial by jury and request for acceptance of a plea of guilty ("plea petition") in both his aggravated assault and coercion cases. The plea petitions read in pertinent part, "My attorney has informed me as to the nature and cause of the charges against me and has investigated and discussed possible defenses to those charges. My attorney has further advised me as to the range of punishment provided by law." The plea petitions also state that the Petitioner understands "that if [he] choose[s] to plead 'NOT GUILTY', the Constitution guarantees . . . the right to a speedy and public trial by jury." They also state that the Petitioner completed the plea petitions by "the exercise of [his] own free will and choice and without any threats or pressure of any kind." Under the "Punishment or Disposition" section on the plea petition for the coercion case, the following was written: "3 years TDOC Range I (30%)[,] Counts 1 & 2 concurrent to each other[,] consecutive to [the aggravated assault case]." Under the same section on the plea petition for the aggravated assault case, the following was written: "3 years Range I (30%)[,] consecutive to [the coercion case]."

Relative to the coercion case, the following exchange occurred at the guilty plea hearing:

> THE COURT: Then in [the coercion case], you are charged with coercion of a witness, a Class D Felony which carries two to twelve years incarceration but if accepted by this Court, you are offering to plead guilty and receive a three year sentence to be served consecutive to or after you serve the other three year sentence at the Tennessee Department of Correction[]. Is that your understanding of what you are doing in that case?
>
> [THE PETITIONER]: Yes.

The prosecutor detailed the factual basis for the pleas. The facts that would have been proven at trial for the aggravated assault case were that on January 18, 2022, the Petitioner had involved himself in a dispute, hitting a man with the butt of a firearm and causing the man bodily injury. Two witnesses identified the Petitioner as the suspect. As for the coercion case, the facts would have shown that the Petitioner worked for the same factory as the victim in the rape and solicitation case. There, the State said that the victim would testify that on two separate occasions, the Petitioner attempted to coerce the victim to testify falsely or not appear in court.

The trial court proceeded with the guilty plea colloquy and asked the Petitioner questions concerning his rights, including his right not to plead guilty, right to a jury trial, right to have the State prove guilt beyond a reasonable doubt, right to an attorney, right to confront witnesses, right to remain silent, and right to an appeal after trial. The Petitioner verbally acknowledged that he was waiving each of those rights by pleading guilty. The following exchange also occurred:

> THE COURT: Okay, anybody threatened you to get you to enter into this plea agreement?
>
> [THE PETITIONER]: No sir.
>
> THE COURT: Are you pleading guilty because you are guilty?
>
> [THE PETITIONER]: No sir.
>
> THE COURT: You are not pleading guilty? Why are you pleading guilty then?

[THE PETITIONER]: Because I don't want to – to be quite honest with you –

(WHEREUPON, Counsel and [the Petitioner] confer briefly)

[THE PETITIONER]: (inaudible)

THE COURT: You are going to have to speak up.

[THE PETITIONER]: Yes sir.  Yes sir.

THE COURT: Alright, you heard what the District Attorney said that he could prove at trial; you heard what he said happened.  Is that true what he said happened?

[THE PETITIONER]: No sir, I didn't hit nobody with a gun.  No sir.

THE COURT: Did you hit somebody?

[THE PETITIONER]: No sir.

At that point, the trial court halted the proceedings and asked the Petitioner to speak with his attorney in private.  After the Petitioner and trial counsel had finished conferring with one another, the proceedings resumed.  The trial court explained the range notices filed in the Petitioner's cases and the potential sentences associated with those ranges.  The trial court then asked again:

THE COURT: Alright, you heard the facts that the Assistant District Attorney says he can prove at trial; are those facts true?

[THE PETITIONER]: Yes, sir.

THE COURT: Are you pleading guilty because you are guilty?

[THE PETITIONER]: Yes sir.

THE COURT: And do you plead guilty?

[THE PETITIONER]: Yes sir.

Thereupon, the trial court accepted the Petitioner's guilty pleas and sentenced him according to the plea agreement. Specifically, the trial court found that the Petitioner entered his pleas knowingly and voluntarily under the circumstances. The trial court also found that the Petitioner had adequate time to talk to trial counsel prior to the entry of his pleas.

## B. Post-Conviction Proceedings

After entry of the guilty pleas, the Petitioner filed several pro se motions that were ultimately denied by the post-conviction court. On October 26, 2022, the Petitioner filed a pro se pleading that the post-conviction court construed as a petition for post-conviction relief. In that pro se petition, the Petitioner asked to have his case "brought back [to] Court, because he was coerc[ed] into taking [the] charges." The post-conviction court appointed post-conviction counsel, who filed an amended petition alleging that trial counsel was ineffective for failing to (1) adequately prepare for and investigate the Petitioner's case, including interviewing witnesses and filing appropriate motions; (2) develop a proper strategy, fully investigate police and witness statements, request and investigate discovery, and timely and adequately explain all evidence against the Petitioner; (3) explain the conditions of the global guilty plea agreement, particularly the consecutive nature of his sentences; (4) explain that there would not be a trial if he pleaded guilty; and (5) communicate with the Petitioner or meet with him regularly outside of the two courts dates in this matter.

The State filed a response to the amended petition, arguing that the Petitioner's plea colloquy reflected that the Petitioner's pleas were voluntary and knowing. Further, the State argued that the trial court explained the Petitioner's rights to him, the effect of his waiver of those rights, and the consecutive nature of the sentences his global plea agreement included.

A hearing was held on the amended petition on June 1, 2023. Before any witnesses were called, the post-conviction court stated on the record that the State had filed range notices with respect to the Petitioner's underlying cases. For the coercion case, the State filed a notice stating that prior convictions would result in Petitioner's sentencing as a Range II offender, requiring four to eight years in prison. In the aggravated robbery case, the State filed a notice stating that the Petitioner qualified as a Range II offender, which would require service of twelve to twenty years for the indicted charge of aggravated robbery or six to ten years for the lesser included offense of aggravated assault.

At the post-conviction hearing, the Petitioner testified that he had three attorneys before trial counsel. He stated those predecessor attorneys had filed motions for a bill of

particulars, additional discovery, a private investigator, and a mental health evaluation. The Petitioner then testified that he never saw the bill of particulars, despite trial counsel's representation that she had received it from the State. However, later in the hearing, the Petitioner said, "I kept throwing up the Bill of Particular[s] and she finally showed me – she told me she had a Bill of Particular[s]." The Petitioner also stated that trial counsel never hired a private investigator.

The Petitioner testified that he gave trial counsel the names of a baby, a ten-year-old, an eleven-year-old, and a fourteen-year-old, all of whom were with the Petitioner at the time of the aggravated robbery. According to the Petitioner, the mother of these potential witnesses, Tahlia Johnson, told the Petitioner that trial counsel never called her. The Petitioner said that as far as he knew, trial counsel had not read the preliminary hearing transcript, which would have informed her of these potential witnesses.

As for the motion for the mental health evaluation, the Petitioner stated that he made trial counsel aware of the pending motion but that he never received the evaluation. The Petitioner agreed that he needed a mental health evaluation because he has "trouble understanding things." He specifically attributed this to his dyslexia and second-grade reading level. On cross-examination, the State asked the Petitioner if he received a mental health evaluation before the post-conviction hearing, to which the Petitioner said he did not have "any paperwork on anything else."

The Petitioner testified that he saw trial counsel only one or two times prior to the entry of his guilty pleas but that he called trial counsel about twenty times per month. He stated that his phone calls were not returned. The Petitioner also testified that trial counsel did not appear at certain court dates and that, at times, these court dates had to be continued.

The Petitioner said that he was confused as to whether the sentences were to run consecutively or concurrently because they were both "C words." He stated that trial counsel had told him to "just sign the papers." The Petitioner stated that he thought his aggregate sentence would be three years total, not six. The Petitioner also recounted that trial counsel had to make some changes to the written agreement, which necessitated her preparing a new one.

On cross-examination, the following exchange occurred:

Q. So you knew about the six year sentence, correct?

A. Yes the whole six years. She told me there will be three years ran together, she said these are two threes.

. . . .

Q. So she did advise you that it was a six year offer?

A. No sir, she told me that two threes would be ran together because I sent a motion in that said ran concurrent and she said yes, [Petitioner], you done said that plenty of times. I am just trying to make sure I get you the six years added to it.

The Petitioner did not call any other witnesses or present any other proof at the post-conviction hearing.

Called by the State, trial counsel said that she had practiced law for fourteen years, with her practice focusing on criminal and family law. She had specifically practiced criminal defense for eleven years as of the time of the post-conviction hearing.

Trial counsel testified that the Petitioner did not see the bill of particulars until the State filed it in October 2021. She did not think a private investigator was necessary for these types of cases in her experience as a defense attorney. She testified that the Petitioner asked trial counsel to talk with another Johnson family member and a manager that apparently worked with the alleged victim in the rape and solicitation case. The last email trial counsel received from the Petitioner was that the manager would reach out to trial counsel with her phone number, but trial counsel never heard from the manager.

Trial counsel stated that she never spoke to the children the Petitioner referenced as potential witnesses in his aggravated robbery case. However, she acknowledged they were old enough to testify as to what happened. Trial counsel did not believe these witnesses were as important because she did not believe the aggravated robbery charge to be the "case at issue." Rather, she testified that the more important case was the case involving the sexual offenses. She testified that she attempted to call Ms. Johnson, but Ms. Johnson's testimony was going to be that the Petitioner did not know the people involved in the aggravated robbery allegation. Trial counsel testified that she did not believe this information was helpful to the case.

Trial counsel testified that she had several years of experience as an attorney working in mental health court. Trial counsel stated that she did not notice any "red flags" with respect to the Petitioner's competency, believing him to be intelligent, able to discuss the case, and understanding of why he was pleading to the aggravated robbery case in order

- 7 -

for the rape and solicitation case to be dismissed. However, trial counsel admitted that she was not aware of the order for the Petitioner to receive a mental health evaluation.

Trial counsel also testified that the Petitioner would call approximately twenty times per month. For this reason, she scheduled weekly Friday discussions with the Petitioner and had multiple conversations with him. She also testified that the Petitioner had a copy of his discovery and the two discussed it "quite a bit."

On the Friday before entry of the guilty pleas, trial counsel met with the Petitioner to discuss the plea offer in a video conference for approximately an hour. Trial counsel testified that they met on video because she had just given birth and was not going into the jail during the COVID pandemic. She further testified that she went over the plea offer with the Petitioner and explained the potential sentence he faced, why she thought he should or should not take the plea, and that he could go to trial if he wished. She explained "ad nauseum" to the Petitioner that the rape and solicitation case carried greater sentencing exposure and required enrollment on the sex offender registry, but the plea agreement would dismiss that case in exchange for pleading guilty to the aggravated assault and coercion charges. At the end of that video conference, the Petitioner decided his better option was to take the plea agreement. Trial counsel also acknowledged that the Petitioner maintained his innocence throughout the cases, but she still advised him of the consequences of pleading guilty versus not pleading guilty.

Trial counsel testified on cross-examination that the changes to the plea agreement at the entry of the guilty plea concerned the violation of probation jail credit, but the consecutive nature of the charges in the agreement did not change from the video conference to the date of the guilty plea hearing. Trial counsel testified that she had spent "hours and hours" explaining to the Petitioner the difference between concurrent and consecutive sentences. She further testified that she did not think she could have explained the "pros and cons" of the case to the Petitioner any more than she had.

C.    Post-Conviction Court's Ruling

The post-conviction court ultimately denied the petition for post-conviction relief. Regarding the issue that trial counsel failed to adequately prepare for the case, failed to fully investigate, failed to investigate and call all appropriate witnesses, and failed to file and litigate all proper motions, the post-conviction court found that the Petitioner did not carry his burden of proving that trial counsel was ineffective because the Petitioner did not present the testimony of any potential witnesses counsel failed to interview. Second, the post-conviction court found that the Petitioner did not present any proof that a mental

health evaluation would have shown he was mentally incompetent "at the time of any of the offenses or at the time he entered the plea."

The second issue was whether trial counsel was ineffective for failing to develop a proper strategy, fully investigate police and witness statements, request and investigate discovery, and properly explain all evidence against the Petitioner in a timely manner. The post-conviction court concluded, "[A]lthough the Petitioner made certain vague allegations in his testimony about trial counsel's performance, he presented no proof how any alleged deficiency would have resulted in a different outcome." The court continued, "No proof was developed to show the Petitioner would not have entered into the plea agreement." The post-conviction court found that the Petitioner failed to prove prejudice on these points.

The third issue was trial counsel's failure to explain to the Petitioner the conditions of his plea agreement concerning the consecutive alignment of the sentences. The post-conviction court found that the Petitioner's guilty pleas were knowing and voluntary based on the transcript of the plea hearing, wherein the Petitioner affirmed that he understood he would serve the sentences consecutively. The post-conviction court also noted that the Petitioner signed the plea petitions, which provided that the sentences were consecutive and not concurrent. The post-conviction court also based its finding on the testimony of trial counsel.

The fourth issue was whether trial counsel failed to explain to the Petitioner that there would not be a trial if the Petitioner pleaded guilty. Based on the Petitioner's answers to the questions during the plea colloquy, the post-conviction court found that the Petitioner understood he was giving up his right to a jury trial by pleading guilty. The post-conviction court specifically found the Petitioner was not credible when he claimed at the post-conviction hearing that he believed he would still receive a jury trial after his pleas.

The fifth and final issue was whether trial counsel failed to adequately communicate or meet with the Petitioner outside of the court dates. The post-conviction court found that this claim was unsupported by the record and without merit, in that trial counsel testified that she scheduled phone conferences with the Petitioner every Friday to discuss his cases.

The post-conviction court denied the petition for post-conviction relief on the foregoing grounds. This timely appeal followed.

## II. ANALYSIS

The Petitioner contends on appeal that the post-conviction court erred in finding that he entered his guilty pleas knowingly, intelligently, and voluntarily. He additionally argues that he received the ineffective assistance of counsel due to trial counsel's failure to (1) adequately prepare for and investigate his cases by interviewing pertinent witnesses and (2) meet with the Petitioner and review discovery with him. The State contends that the Petitioner has failed to establish the factual predicate for both his voluntariness and ineffectiveness claims. We agree with the State.

Post-conviction relief is available when a "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. The burden in a post-conviction proceeding is on the petitioner to prove allegations of fact by clear and convincing evidence. *Id.* § -110(f); *see Dellinger v. State*, 279 S.W.3d 282, 293-94 (Tenn. 2009). "[Q]uestions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved" by the post-conviction court. *Fields v. State*, 40 S.W.3d 450, 456 (Tenn. 2001).

### A. Validity of the Guilty Pleas

The Petitioner argues that his guilty pleas were not entered knowingly, intelligently, and voluntarily because he did not know the difference between consecutive and concurrent sentences. The Petitioner also argues that he felt "like he had to" enter his guilty pleas and that trial counsel did not explain important aspects of the cases against him. The State argues that the Petitioner failed to prove that he did not understand the difference between consecutive and concurrent sentences. We agree with the State.

A guilty plea must be knowing and voluntary to be constitutionally valid. *Boykin v. Alabama*, 395 U.S. 238, 242 (1969); *State v. Mackey*, 553 S.W.2d 337, 340 (Tenn. 1977), *superseded on other grounds by* Tenn. R. Crim. P. 37(b) and Tenn. R. App. P. 3(b). Whether a guilty plea is voluntary and knowing requires an affirmative showing that the defendant has been made aware of the significant consequences of such a plea before it is accepted. *Boykin*, 395 U.S. at 242; *Mackey*, 553 S.W.2d at 340. A trial court must question the defendant to ensure the defendant fully understands the guilty plea agreement and its consequences. *Boykin*, 395 U.S. at 243-44; *Mackey*, 553 S.W.2d at 341; *see* Tenn. R. Crim. P. 11(b)(1).

Our supreme court has recognized that "the decision to plead guilty is often heavily influenced by the defendant's appraisal of the prosecution's case against him and the

likelihood of securing leniency through a plea bargain." *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993) (quoting *Brown v. Perini*, 718 F.2d 784, 786 (6th Cir. 1983)). Factors used in determining whether a defendant's guilty plea was knowing and voluntary are as follows: (1) the defendant's relative intelligence; (2) the degree of the defendant's familiarity with criminal proceedings; (3) whether the defendant was represented by competent counsel and had the opportunity to confer with counsel about the available options; (4) the extent of advice from counsel and the trial court concerning the charges against the defendant; and (5) the defendant's reasons for deciding to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial. *Id*. Ignorance, misunderstanding, coercion, inducements, or threats render a plea involuntary. *Boykin*, 395 U.S. at 242-43.

Whether a guilty plea meets the constitutional standards of voluntary and knowing is a mixed question of law and fact. *Jaco v. State*, 120 S.W.3d 828, 830 (Tenn. 2003). Therefore, a reviewing court analyzes the post-conviction court's findings of fact de novo with a presumption of correctness and its findings of law purely de novo. *Id*. at 830-31.

The Petitioner's primary claim on appeal related to the voluntariness of his plea is that he did not understand that his sentences would be served consecutively for an effective sentence of six years. In denying relief, the post-conviction court explicitly made the factual finding that "the Petitioner was aware that he would be serving the sentences consecutively and not concurrently." In reaching this conclusion, the post-conviction court relied upon the Petitioner's sworn oral and signed statements at the plea hearing and implicitly accredited the testimony of trial counsel at the post-conviction hearing. The Petitioner's signed plea petitions clearly indicated that consecutive sentences would be imposed, even though the documents did not explicitly state that his effective sentence would be six years. Nevertheless, trial counsel testified that, during the course of her weekly phone conversations, she spent "hours and hours" explaining to the Petitioner the difference between concurrent and consecutive sentences. Further, at the guilty plea hearing, the Petitioner responded affirmatively when asked by the trial court if he understood that he would "receive a three year sentence to be served consecutive to *or after* you serve the other three year sentence at the [TDOC.]" (Emphasis added).

We note that a petitioner's "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

> A petitioner's sworn responses to the litany of questions posed by the trial
> judge at the plea submission hearing represent more than lip service. Indeed,
> the petitioner's sworn statements and admissions of guilt stand as a witness

- 11 -

against the petitioner at the post-conviction hearing when the petitioner disavows those statements.

*Camacho v. State*, No. M2008-00410-CCA-R3-PC, 2009 WL 2567715, at *7 (Tenn. Crim. App. Aug. 18, 2009). In light of the foregoing, we conclude that the evidence in the record does not preponderate against the post-conviction court's factual finding that the Petitioner was aware that he was receiving an effective six-year sentence at the time of his guilty pleas.

Additionally, although the Petitioner testified that he read on the second-grade level and had dyslexia, trial counsel testified that in light of her experience working in mental health court, the Petitioner did not appear unintelligent or unable to discuss the case, despite the granted motion for the mental health evaluation. The Petitioner also responded to the plea colloquy questions, affirming that he understood his rights and that he would be waiving those rights in pleading guilty. The trial court accredited the Petitioner's solemn declarations and responses to the plea colloquy questions in open court. Further, the Petitioner also signed both plea petitions, which noted the consecutive nature of the three-year sentences from both cases. Also, during the plea hearing, the trial court affirmed the Petitioner's understanding of the global plea agreement's terms and consequences.

We further note that the Petitioner had familiarity with the criminal justice system prior to the entry of his pleas; the State originally sought to sentence him as a Range II offender, and he had previously pleaded guilty to making a false report to a law enforcement officer. Trial counsel spoke with the Petitioner on a weekly basis and explained to him "ad nauseum" his charges and available options. The post-conviction court explicitly found the Petitioner's claim that he believed he would still receive a jury trial following his guilty pleas not to be credible. By pleading guilty, the Petitioner received an effective sentence that would have been less than the minimum sentence required had he been convicted of the charged offense of aggravated robbery; he also obtained the dismissal of his rape and solicitation case, a goal that was paramount in the view of trial counsel. We acknowledge, however, that the plea colloquy in this case could have been more robust and that the better practice would have been for the trial court to engage in further inquiry following the Petitioner's initial reluctance to accept the factual predicate for the charges. Nevertheless, trial counsel's testimony demonstrated that she had fully discussed the plea agreement with the Petitioner and that he had decided the Friday before the plea hearing that guilty pleas were his best option. For these reasons and following our de novo review, we agree with the post-conviction court's ultimate conclusion that the Petitioner entered his pleas knowingly, intelligently, and voluntarily.

- 12 -

### B.     Ineffective Assistance of Trial Counsel

Criminal defendants are constitutionally guaranteed the right to effective assistance of counsel. U.S. Const. amend. VI; Tenn. Const. art. I, § 9; *see Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980); *Dellinger*, 279 S.W.3d at 293. When a claim of ineffective assistance of counsel is made under the Sixth Amendment to the United States Constitution, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993). "Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). The *Strickland* standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. *State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

Deficient performance requires a showing that "counsel's representation fell below an objective standard of reasonableness," and reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 688-89. When a court reviews a lawyer's performance, it "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." *Howell v. State*, 185 S.W.3d 319, 326 (Tenn. 2006) (citing *Strickland*, 466 U.S. at 689). We will not deem counsel to have been ineffective merely because a different strategy or procedure might have produced a more favorable result. *Rhoden v. State*, 816 S.W.2d 56, 60 (Tenn. Crim. App. 1991). We recognize, however, that "deference to tactical choices only applies if the choices are informed ones based upon adequate preparation." *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992) (citing *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982)).

Regarding the prejudice prong in the context of a guilty plea, the effective assistance of counsel is relevant only to the extent that it affects the voluntariness of the plea. *See Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (citing *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). Therefore, to satisfy the second prong of *Strickland*, the petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59; *see also Walton v. State*, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997).

On appeal, we are bound by the post-conviction court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. *Fields*, 40 S.W.3d at 457. Because they relate to mixed questions of law and fact,

- 13 -

the post-conviction court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial are reviewed under a de novo standard with no presumption of correctness. *Id*.

Here, the Petitioner argues on appeal that trial counsel was ineffective for failing to adequately prepare for and investigate the case, in that she did not interview eyewitnesses that would have exonerated the Petitioner. The post-conviction court denied this claim, concluding that "the Petitioner did not present the testimony of any potential witnesses that were not interviewed by trial counsel." To succeed on a claim of ineffective assistance of counsel for failure to discover, interview, or present witnesses, the petitioner should present these witnesses at the post-conviction hearing. *Black v. State*, 794 S.W.2d 752, 757-58 (Tenn. 1990). A petitioner is not entitled to relief unless the material witness is introduced and proffers favorable testimony in support of the petitioner's defense. *Id*. at 758. Generally, this is the only way to establish that trial counsel's failure resulted in the denial of critical evidence, prejudicing the petitioner. *Id*. at 757. "[N]either a trial judge nor an appellate court can speculate or guess on the question of whether further investigation would have revealed a material witness or what a witness's testimony might have been if introduced by [trial] counsel." *Id*. The post-conviction court correctly ruled that the Petitioner's failure to call any potential witnesses at the post-conviction hearing defeated a showing of ineffective assistance of trial counsel.

The Petitioner also argues that trial counsel was ineffective for failing to meet with him and review discovery with him. The post-conviction court found that this claim was not supported by the record, noting that trial counsel had a phone call with the Petitioner every Friday before the entry of his pleas. We note that trial counsel's testimony was detailed in regard to the frequency with which she talked with the Petitioner and the topics that they discussed. She testified that she provided discovery materials to the Petitioner and reviewed those materials with him. Nothing in the record preponderates against the post-conviction court's credibility finding. Accordingly, we agree that the Petitioner failed to establish deficient performance.

The post-conviction court found that the Petitioner developed no proof to show that he would not have entered into the plea agreement but for trial counsel's alleged deficiency. We have carefully reviewed the proof at the post-conviction hearing and conclude that the record does not preponderate against the post-conviction court's findings on this point. At the hearing, the Petitioner made general references about wanting a trial, but these references were followed by statements regarding the severity of the charges that the Petitioner faced if he had proceeded to trial. On the whole, we believe that the post-conviction court correctly ruled that the Petitioner had failed to prove prejudice, i.e., that but for counsel's alleged errors, he would not have pleaded guilty and would have

insisted on going to trial. This prevents a finding of ineffectiveness related to his guilty-pleaded convictions. *See Lockhart*, 474 U.S. at 56. The Petitioner is not entitled to relief.

## III. CONCLUSION

In consideration of the foregoing and the record as a whole, we affirm the judgment of the post-conviction court.

_____
KYLE A. HIXSON, JUDGE